SETH F. HANCHETT, Sheriff, *et al.*

*v.*

JOSEPH F. IVES.

*Filed at Ottawa May 14, 1890.*

1. EXECUTION LIENS—*priority—as between several executions.* Where several executions against the same defendant are issued, and placed in the hands of different officers, they will attach as liens on the defendant's property in the order in which they are received. So where, after an execution came to the hands of a sheriff, a constable levied an attachment upon a horse of the defendant in the writs, and the sheriff took the horse from the custody of the constable and sold it, it was *held,* that the execution in the sheriff's hands became the prior lien upon all the personal property of the debtor, and that the sheriff was guilty of no trespass in levying upon and selling the horse.

2. NOMINAL PLAINTIFF—*right to dismiss suit.* There is no error in overruling a motion to dismiss a suit on the stipulation of the nominal plaintiff who sues for the benefit of others, when the dismissal will be to their prejudice.

3. PRACTICE—*directing what the verdict shall be.* Where the facts set up in a replication to a plea of the defendants in an action of trespass are not conceded by the defendants, the court will not be justified in directing the jury to find the defendants guilty of the trespass.

APPEAL from the Appellate Court for the First District;— heard in that court on appeal from the Superior Court of Cook county; the Hon. KIRK HAWES, Judge, presiding.

This is an action of trespass, begun in the Superior Court of Cook county. By the amended declaration the suit is by Joseph F. Ives, who sues for the use of Massey, Geddes and Robert F. Graff, and against George W. Kretzinger, Joseph T. Kretzinger and Seth F. Hanchett, the latter being sued as sheriff of Cook county. The cause of action alleged in the declaration is, that defendants below did, on the 4th day of January, 1886, with force, seize and take the goods and chattels of the plaintiff, to-wit, one bay stallion, of the value of

$1000, and convert and dispose of him to their own use, to the damage of the plaintiff, etc.

The defendants pleaded the general issue. Hanchett also filed several special pleas, the substance of which is, that his co-defendants sued out a writ of execution on a judgment in their favor, against one Willis Drummond, Jr., directed to him as said sheriff of Cook county, commanding him to make the sum of $2903.30 damages, and $7.50 costs of suit, out of the goods and chattels, lands and tenements, of said Drummond, in said county, and that after said writ came to his hands, and after the same had thereby become a lien upon all the personal property of said Drummond, in said Cook county, and while such lien continued, the plaintiff, Ives, acting as one of the constables of Cook county, levied a certain writ of attachment, issued out of one of the justices' courts of Cook county, against said Drummond, upon said stallion, then owned and possessed by said Drummond, and turned the same over to a third party, to hold for him; and that the defendant, as such sheriff, by virtue of the execution aforesaid, which was a prior and paramount lien upon said stallion, while said execution was in full force and effect, levied upon and took said stallion, and caused him to be sold, in obedience to said writ of execution, which is the same taking in, etc.; that at the time of said taking, said horse was the property of Willis Drummond, Jr., liable to be taken on said execution, and not the property of the plaintiff, Ives.

Issue was joined on the plea of the general issue, and to one of said special pleas plaintiff filed a replication, in which he averred that after said Ives had levied said writ of attachment upon said horse, the defendants agreed with said Ives and the plaintiffs in said attachment writ, that all their rights under the prior writ, and all liens against said horse created by it, should be postponed and made subject to the attachment writ, and that they (Hanchett and Kretzingers) should in nowise interfere with the execution of the same,—which agreement

was made in consideration that the said Ives and the plaintiff in the attachment writ would not contest the validity of said Kretzingers' said judgment, which they were then taking steps to do, setting up the facts upon which said proposed attack could be maintained. To this replication defendants, by way of rejoinder, made a general denial, and plaintiff took issue thereon.

Pending said trial, defendants presented an agreement between themselves and said Ives, stipulating that said suit should be dismissed at the costs of Ives, and moved the court for an order of dismissal, according to its terms, but the motion was overruled. The trial resulted in a judgment in favor of the plaintiff below for $388 and costs, from which appellants appealed to the Appellate Court for the First District, where the judgment of the Superior Court was affirmed, and they now prosecute this further appeal.

After the evidence on both sides had been concluded, the trial court gave to the jury the following instruction:

"From matters shown in evidence, which are conceded by both parties and not disputed by either, the court rules that the act of defendants in taking the horse was a trespass, and the verdict should be in favor of the plaintiff and against the defendants; but it will be for the jury to say, under the evidence and instructions, what the amount of damages shall be."

Messrs. ABBOTT & BAKER, for the appellants:

The contract alleged in the replication is not proven. There is a variance between the allegation and proof. *Connolly* v. *Cottle,* Breese, 365; *Hurd* v. *Culies,* 18 Ill. 188; *Murray* v. *Haverty,* 70 id. 318; *Spangler* v. *Pugh,* 21 id. 86.

The court erred in refusing to dismiss the case upon the stipulation of Ives, and in permitting the declaration to be amended, after the return of the verdict, by the insertion of the names of Geddes and Graff as usees. The evidence fails to support trespass.

The attachment writs being subsequent, levy thereunder was subject to prior execution liens. Drake on Attach. sec. 220; *Crocker* v. *Pierce,* 31 Me. 183; *Frazer* v. *Wilcox,* 4 Rob. 527.

Messrs. ABBOTT, OLIVER & SHOWALTER, for the appellee:

Ives, the technical plaintiff, had no right to dismiss the suit as against the beneficiaries. *Sloan* v. *Somers,* 14 Md. 513; *Williamson* v. *Railroad Co.* 29 N. J. Eq. 334; *Marsh* v. *White,.* 3 Barb. 519; *Howland* v. *Willetts,* 9 N. Y. 174; *Davenport* v. *Tilton,* 10 Metc. 327; *Dyer* v. *Burnham,* 48 Me. 299; *Buckmaster* v. *Beames,* 3 Gilm. 97; *Eckford* v. *Hogan,* 44 Miss. 404; *James* v. *State,* 49 id. 433; *Harquer* v. *McCullough,* 2 Denio, 119; *Goodrich* v. *Stearns,* 116 Mass. 171; *Steele* v. *Thompson,.* 62 Ala. 327.

By Ives' levy the property became *in custodia legis,* and the execution lien does not exist against property in the custody of the law. When a levy is once made, the title of the officer dates back to the delivery of the writ. If no levy is made, there is no lien,—the defendant's goods are entirely unaffected. *Payne* v. *Drewe,* 4 East, 522; *Hogan* v. *Lucas,* 10 Pet. 400; *Commonwealth* v. *Stratton,* 7 J. J. Marsh. 90; *Tabb* v. *Harris,.* 4 Bibb, 31; *Kelley* v. *Haggin,* 3 J. J. Marsh. 212; *Million* v. *Commonwealth,* 1 B. Mon. 310; *Jones* v. *Judkins,* 4 Dev. & B. 454; *Field* v. *Milburn,* 9 Mo. 488; *Wylie* v. *Hyde,* 13 Johns. 249; *Becker* v. *Torrence,* 31 N. Y. 641; *Buck* v. *Colbeth,* 3 Wall. 341; *Taylor* v. *Carryl,* 20 How. 538; *Freeman* v. *Howe,* 24 id. 460; *Norton* v. *McCall,* 66 N. C. 162; *Ladd* v. *Adams,* id. 164; *Buckhurst* v. *Clinkard,* 1 Show. 174; *Munson* v. *Harroun,* 34 Ill. 423; *Corbin* v. *Pearce,* 81 id. 463; Freeman on Executions, sec. 195.

Mr. JUSTICE WILKIN delivered the opinion of the Court:

Admitting that under the special replication by plaintiff, and the issue joined thereon, trespass can be maintained, the defendants clearly had the right to have that issue submitted to

the jury, under proper instructions from the court. In other words, the facts set up in the replication in bar of defendants' special plea are not so far conceded by defendants as to justify the court in directing the jury to find them guilty on that issue. The instruction was no doubt based upon the theory, that under the facts stated in the special pleas, the execution under which the sheriff, Hanchett, claimed to have taken possession of the horse was not entitled to priority over the levy of the attachment writ, and the Appellate Court has so held.

It is conceded by all parties that the Kretzinger execution came to the hands of the sheriff prior to the issuing of the attachment. But it is also admitted that the attachment was first levied, and that the sheriff, after such levy, seized and sold the horse under his execution. Under these conceded facts the question arises, whether or not, under the law of this State, an execution coming to the hands of an officer authorized to execute the same, becomes a lien on the personal property of the defendant therein from the date of its receipt, as against a subsequent writ issuing from a different court and actually levied by a different officer, so as to entitle the holder of the first writ, before sale, to seize the property and take it from the second officer.

Section 9, chapter 77, of our statute, entitled "Judgments, Decrees and Executions," provides: "No execution shall bind the goods and chattels of the person against whom it is issued until it is delivered to the sheriff, or other proper officer, to be executed, and for the better manifestation of the time, the sheriff or other officer shall, on the receipt of such writ, indorse upon the back thereof the day of the month, and year, and hour when he received the same."

It is not denied that under this section, where several writs of *fieri facias* come to the hands of the same officer, they must be satisfied in the order in which they were received; but appellee insists that that rule has no application to the facts of this case, and he maintains that where several writs against

the same defendant. are in the hands of different officers, the officer who first seizes property under his writ, by levy, obtains priority for its satisfaction out of the property levied upon, notwithstanding other writs may have been received by other officers prior to the time his came to hand. However firmly the rule contended for may be established in other jurisdictions, it has never been adopted in this State. Directly the contrary was decided by this court in *Rogers* v. *Dickey*, 1 Gilm. 636. It was there said: "The doctrine is therefore well settled in England,—which this court is inclined to adopt,—that where two or more writs of *fi. fa.* are delivered at different times, either to the same or different officers, and no sale is actually made of the defendant's goods, the execution first delivered must have the priority, though the first seizure may have been made on a subsequent execution."

It is not denied that this case is an authority directly against the contention of appellee, but it is said it did not involve this question, and therefore the decision is extra-judicial. It is true, in that case the writ under which the constable seized the property of Betts, defendant in the two writs, was a distress warrant issued by a landlord. The statute then in force authorizing a distress for rent, as stated in the opinion by YOUNG, J., made it necessary for the person to whom the rent was due, to call to his assistance the sheriff, or some constable of the county, when he went to seize the goods of his tenant, and required of him, before the property so seized could be sold, to obtain a judgment against the tenant.

We need not stop to inquire whether it was absolutely necessary, under the facts of that case, to treat the writ under which the goods were seized by the constable, as having all the force and effect of a *fi. fa.* It is perhaps true that the decision could have been placed on a different ground, and the decision of the question here involved avoided. There can be no doubt, however, from the authorities cited in the briefs of counsel, and the opinion rendered, that the very eminent counsel on either side,

as well as the court, treated the issue then before the court precisely as it must have been treated had the constable held a writ of *fi. fa.* instead of a distress warrant, and the whole case made to turn upon the decision of this identical question. That decision has never been modified, or even criticised, so far as we know, and has been understood by the profession as settling the rights of parties under executions issued from the various courts of this State, whether in the hands of the same or different officers. If, therefore, it be admitted that the weight of authority is against it, no such convincing reasons have been adduced in support of the contrary rule as would justify our overruling it at this late day. Evils anticipated as a result of adhering to it have not been experienced in the past, and there is no substantial ground for fearing them in the future.

We are of the opinion, then, that the execution in the hands of Hanchett, sheriff, became a prior lien upon all the personal property of Drummond in Cook county, and that he was guilty of no wrong in levying upon and selling the horse in question merely because a junior attachment writ had been levied, no sale having been made.

There was no error in overruling the motion to dismiss the suit on the stipulation of Ives. The action was for the benefit of the plaintiffs in the attachment suit. The court, in refusing to allow Ives to control it to their prejudice, committed no error. In the view here expressed, other points raised are unimportant.

The judgments of the Appellate and Superior Courts are reversed, and the cause remanded to the latter.

*Judgment reversed.*