JEREMIAH MEAD, Appellant, *v.* THE NATIONAL BANK OF PAWLING, Respondent.

*Promissory note — agreement that it shall not be enforced — when nugatory.*

Where a promissory note is given for a proper consideration an agreement that it shall not be collected or that its payment shall not be enforced is entirely nugatory, and an action may be maintained upon the note when the note becomes due notwithstanding such promise.

APPEAL by the plaintiff, Jeremiah Mead, from a judgment of the Supreme Court in favor of the defendant, entered in the office of

the clerk of the county of Dutchess on the 3d day of October, 1894, upon the verdict of a jury rendered by direction of the court after a trial at the Dutchess County Circuit.

*W. Farrington,* for the appellant.

*William Downing* and *Hackett & Williams,* for the respondent.

DYKMAN, J.:

This is an action brought by the plaintiff against the bank for the recovery of a balance alleged to be due the plaintiff from the defendant. The plaintiff, in his complaint, alleged that between the 1st day of October, 1891, and the commencement of this action, he had deposited with the defendant various sums of money amounting in the aggregate to the sum of $42,106.46, and that he withdrew from the defendant the sum of $33,745, and demanded judgment for the balance, $8,361.46.

The defendant, in its answer, alleged that between the dates mentioned in the complaint the plaintiff deposited with the defendant divers sums of money, amounting in all to $74,289.03, which sum includes all the items mentioned in plaintiff's complaint except the deposit of $800, alleged to have been made on June 1, 1893. That deposit was denied by the defendant, and the plaintiff did not prove it or attempt to do so on the trial. The defendant further alleged in its answer that the plaintiff, by his checks and orders, drew from the defendant out of his deposits the sum of $74,197.54 between the dates mentioned in the complaint, leaving a balance on deposit to his credit of only $91.49.

The defendant also set up a counterclaim in its answer against the plaintiff, amounting to the sum of $3,435.76, with interest. That claim was not denied by the plaintiff, and it was admitted upon the trial.

The real controversy upon the trial had relation to certain notes which had been given by the plaintiff to the bank. It was his theory and his testimony that the cashier and the teller of the bank requested him to permit them to use his name in stock speculations, and stated that they desired his name on notes which would be discounted by the bank for that purpose, for the reason that their names ought not to appear in that way by reason of their official

relations with the bank, and that they agreed that the bank would take care of the notes as they became due. It was also his claim that none of the transactions connected with these stock speculations were to affect his account with the bank, but that they were matters entirely between the defendant and its cashier and teller; that he should not be charged with any of the notes given or discounted, nor should he be credited with anything received on the sale of the stock. The difference between the parties is the amount charged and credited to the plaintiff in these stock speculations.

The cause came on for trial at the Circuit before a jury, and at the close of the plaintiff's case the court directed a verdict in favor of the defendant for $3,419.86, to which the plaintiff excepted. The plaintiff also asked to go to the jury upon certain questions of fact, which the court denied.

The plaintiff, upon the trial, admitted all the items on the debit and credit side of his account with the bank to be correct, and his counsel stated in an affidavit, read upon the opening of the trial, that the items of the defendant's account and the dates were not disputed, but claimed and insisted that the only question to be tried was whether the items were chargeable to or properly credited to the plaintiff. Such an admission seemed to eliminate every other question from the case, and it devolved, therefore, upon the plaintiff to show why it was not proper for the defendant to credit him with the amount which appeared to his credit on the account, and also to show why he should not be charged with his checks, notes and orders, all of which were admitted by him to be correct, and which were the only charges against him in his account.

The plaintiff was a witness in his own behalf upon the trial, and he admitted the genuineness of all the notes, checks, drafts and orders with which he was charged in the account. His theory was that he was not liable upon notes given by him, and discounted by the bank, because he claimed that the proceeds of the notes were to be used by the cashier and the teller to purchase and speculate in stocks, and the checks and orders given by him, upon which the bank paid the money, were void for the same reason. In support of this theory he testified as follows: " In the fall of 1891 I had a conversation with Mr. Haight with reference to stock. Mr. Haight asked me for my name, he said he wanted to speculate in stock

and they would take care of me, the bank would take care of me. (Haight was the teller.)  *  *  *  He said his name could not appear in the bank and wanted to use my name.  *  *  *  I signed a note at that time.   I think it was about $6,200."   (The cashier of the bank was Mr. Chase.)   The plaintiff further testified as follows : "Chase asked me to sign that note.  * . *  *  This conversation *  *  *  was on the street.   Q. What was your and Chase's conversation?   A. About the same as with Haight.  *  *  *  The next transaction that I recollect of, Chase sent me to Danbury with an $8,400 note.   By the Court.— Signed by you?   Your note, was it?   A. Yes, sir."

That testimony was denied by the cashier.   The question of fact thus raised was quite immaterial upon the trial of this action.

Conceding his testimony to be true, and that he expected the officers of the bank to take care of his notes as they became due, and that they were given for the purpose of raising money as he states, yet that was no defense for him against the notes in the hands of the bank.   Having made the paper, he was under obligation to pay it.   In any case where a promissory note is given for a proper consideration, an agreement that it shall not be collected, or that its payment shall not be enforced, is entirely nugatory, and an action may be maintained upon it when it becomes due, notwithstanding such promise.   That principle is sufficient to defeat the plaintiff in his contention in this case, and the verdict was properly directed by the trial court.

The judgment should be affirmed, with costs.

PRATT, J., concurred ; BROWN, P. J., not sitting.

Judgment affirmed, with costs.